AO 106 (Rev. 01/09) Application for a Search Warrant



# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 2:18mj934
2180 Margaret Avenue )
Columbus, OH 43219 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Southern_____ District of _____Ohio_____ *(identify the person or describe property to be searched and give its location):* Property to be searched, 2180 Margaret Avenue, is a two-story, single family, residence, with blue siding, white trim, and the numbers "2180" posted outside near the front door; and the surrounding curtilage. The residence is located on the north-side of Margaret Ave., with the front door facing south.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1956___ , and the application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jason R. Burns, ATF Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 12-21-18

_____
Judge's signature

City and state: Columbus, Ohio                Chelsey M. Vascura , U.S. Magistrate Judge
Printed name and title

**Affidavit for Search Warrant:**

## I.
## INTRODUCTION

I, Jason R. Burns, being duly sworn, depose and state as follows: I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives and have been so employed in this capacity since 2005. During the course of my employment, I have received specific training and have obtained experience in investigations of Federal currency violations including money laundering. By virtue of my experience and training, I am familiar with money laundering techniques utilized by individuals involved in illegal activities, such as narcotics trafficking. I know that it is common for narcotics traffickers to accumulate large sums of U.S. Currency that they seek to launder in order to avoid detection of their illegal activities, and attempt to freely spend the cash without drawing law enforcement scrutiny.

Based upon my training, experience, investigative efforts, and information and insight given to me by other Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and officers of the Columbus Ohio Division of Police (CPD), I submit there is probable cause to believe that Jonathan NOBLE is involved in money laundering activities associated with the distribution of controlled substanes. I believe there exists sufficient probable cause that contained within the below listed property evidence of those activities exist.

## II.
## PURPOSE OF AFFIDAVIT

This affidavit is submitted for the limited purpose of establishing probable cause in support of an application of a warrant to search the property located at 2180 Margaret Ave., Columbus, Ohio 43219, and therefore contains only a summary of the relevant facts. I have not included each and every fact that I, or others, have learned during the course of this investigation. The information set forth in this affidavit is based on my own participation in the investigation, information I have received from other law enforcement officials, and from my and other agent's analysis of documents and records relating to this investigation. As the case agent of this investigation, I am familiar with the investigative efforts of other Agents/Columbus Police Detectives who have worked on this investigation. Further, I am familiar with the evidence gathered through the issuance of search warrants and information provided to myself and other agents by cooperating individuals and informants. I believe there exists sufficient probable cause that evidence of the violations:

- Title 18 U.S.C. § 1956 (a)(1)(A)(I) - Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity;
- Title 18 U.S.C. § 1956 (a)(1)(B)(i) - Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity;

1

- Title 18 U.S.C. § 1956 (h) - Conspiracy to promote the carrying on of the specified unlawful activity and to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity;
- Title 21 USC-841- Possess with Intent to Distribute a Controlled Substance;
- Title 21 USC-846 - Conspire to Possess with Intent to Distribute a Controlled Substance.

### III.
### ITEMS TO BE SEIZED

A list of the specific items to be seized from 2180 Margaret Ave., Columbus, Ohio 43219 is attached hereto as Attachment A, and Attachment A is incorporated herein by reference. Based on my training and experience, as detailed above, I believe that there is probable cause to believe that the items listed in Attachment A will be found at 2180 Margaret Ave., Columbus, Ohio 43219, as more fully described in Attachments A.

### IV.
### PROBABLE CAUSE

1. In July 2018, an ATF Confidential Informant (CI) advised S/A Jason Burns that a Drug Trafficking Organization (DTO) was operating on the west side and south side of Columbus, OH, utilizing several residences to distribute narcotics known as "Trap Houses." The CI advised that she/he was provided a phone number to contact the DTO for narcotics. S/A Burns has identified several narcotics distributers for the DTO, including Jonathan NOBLE. The CI advised that the DTO supplies Heroin and Crack Cocaine. The CI advised that she/he has been to several "Trap Houses" used by the DTO and that firearms are present during the distribution of narcotics. The CI has provided reliable information that has been corroborated by S/A Burns.

2. A criminal history check on NOBLE (FBI #: 756830AC4) revealed that NOBLE has a criminal record which includes weapons and narcotic related offenses.

3. On or about July 11, 2018, the CI made a call to phone number (614-270-3876). The CI was instructed to come to an unrelated residence (Trap House #1) to purchase narcotics. S/A Burns was present for this phone call. S/A's Shane Messner and Burns drove the CI to this location, and the CI purchased an amount of Heroin from a Male/White, later identified as Bryan BUHRTS, with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from the Male/White. The CI advised that there were multiple individuals inside the location.

4. On or about this same date, your affiant watched and listened to the narcotics transaction between the CI and the Male/White, later identified as BUHRTS. Your affiant observed a silver Chevy Malibu, Ohio Tag: HDT-6521 and a blue Chevy

2

Impala, Ohio Tag: HDT-6522, both cars registered to Jonathan NOBLE, with a listed address of 2180 Margaret Ave., Columbus, OH. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant was able to identify NOBLE, dressed in a red T-shirt, standing in the kitchen near the table where BUHRTS was supplying narcotics.

5. A criminal history check on BUHRTS (FBI #: 867969FD1) revealed that BUHRTS has a criminal record which includes weapons and other violent offenses, including robbery and burglary.

6. On or about July 23, 2018, NOBLE purchased a 2013 black Dodge Charger automobile, which reflected Ohio Temporary Tag: G194731. According to the issuance of the temporary tag NOBLE, purchased this automobile from COUGHLIN AUTOMOTIVE OF MARYSVILLE, LLC. After the purchase of this vehicle, the vehicle began showing up at residences where NOBLE was present and selling narcotics.

7. On or about August 3, 2018, your affiant was contacted by the CI who advised that Trap House #1 was still being used to traffic narcotics. The CI advised NOBLE was recently selling narcotics from this residence.

8. On or about August 8, 2018, your affiant conducted surveillance at 2180 Margaret Ave., Columbus, OH. This is the listed address on NOBLE's Ohio Driver's License issued on 3/22/2017. Your affiant observed several vehicles parked on Margaret Ave. in front of 2180 Margaret Ave., to include the blue Chevy Impala (Tag: HDT-6522) and the silver Chevy Malibu (Tag: HDT-6521) that were parked in the rear of Trap House #1 during an ATF controlled purchase of narcotics on 7/11/2018. Your affiant observed additional vehicles parked at 2180 Margaret Ave., including a white Chrysler, bearing Ohio Tag: HCK4656; and a black motorcycle parked in the front yard, bearing Ohio Tag: CUD08. The Chrysler and the motorcycle registered to NOBLE, with a listed address of 2180 Margaret Ave. Your affiant also observed a black Dodge Charger, bearing Ohio Temp. Tag: G194731 which is also registered to NOBLE

9. On or about August 9, 2018, your affiant observed the black Dodge Charger parked in the rear of Trap House #1. The Charger was backed in, and your affiant was unable to verify the license plate on the rear of the vehicle. There was no license plate on the front of the vehicle. The Dodge Charger is consistent in make, model and color with the Dodge Charger your affiant observed at 2180 Margaret Ave. on 8/8/2018.

10. On or about August 10, 2018, your affiant observed the black Dodge Charger parked in the rear of Trap House #1. The Charger was backed in, and your affiant was unable to verify the license plate on the rear of the vehicle. There was no license plate on the front of the vehicle. Later that day, your affiant returned to Trap House #1, and was able to identify the Temp. Tag on the rear of the Dodge Charger as G194731, which registers to NOBLE at 2180 Margaret Ave., Columbus, OH.

11. On or about August 13, 2018, your affiant conducted surveillance at 2180 Margaret Ave., Columbus, OH and observed the black Dodge Charger parked on the street, near the residence. Your affiant verified the Ohio Temp. Tag as G194731 with an expiration date of 9/06/2018.

12. On or about August 23, 2018, your affiant observed a black Dodge Charger parked in the rear of Trap House #1, Columbus, Ohio. Your affiant recognized the Dodge Charger from previous surveillance done at 2180 Margaret Ave. and Trap House #1, and knows that the vehicle is registered to NOBLE.

13. On this same date, the CI made a call to phone number (614) 270-3876. The CI was instructed to come to Trap House #1, Columbus, OH. Your affiant and S/A Adam Klontz were present for this phone call. Your affiant drove the CI to this location, and the CI purchased an amount of Heroin from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from NOBLE. The CI advised that the CI exited the residence from the rear door, and returned to S/A Klontz's vehicle. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI.

14. On or about August 30, 2018, S/A Burns and Task Force Officer (TFO) Jerry Orick met the CI, and the CI had arranged for the purchase of Crack Cocaine and/or Heroin from Trap House #1, Columbus, OH. Your affiant drove the CI to this location, and the CI purchased an amount of Heroin and Crack Cocaine from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from NOBLE. The CI advised that the CI exited the residence from the rear door, and returned to your affiant's vehicle. The CI advised that NOBLE's black Dodge Charger was parked in the rear of the residence. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected Crack Cocaine, which tested positive for Cocaine.

15. On or about September 5, 2018, ATF Agents and TFO's conducted a Federal search warrant at one of the DTO's "Trap Houses" located at 4364 Leesburg Court North, Columbus, OH. Agents and TFO's recovered four (4) firearms, suspected Crack Cocaine, suspected Heroin, suspected marijuana, approx. $4,000.00 in U.S. Currency, and other drug paraphernalia. Among the individuals identified at the residence was Gary W. FROHNAUER. Your affiant spoke with Gary W. FROHNAUER, who advised that he was in the basement sleeping when the police arrived. FROHNAUER advised that narcotics trafficking is going on at the residence, but he was not there to purchase narcotics. FROHNAUER later advised your affiant that he is a drug user.

16. On or about September 10, 2018, your affiant conducted surveillance at 2180 Margaret Ave., Columbus, OH. S/A Burns observed the black Dodge Charger parked in front of the residence, bearing Ohio Tag: HOC-7033. Your affiant is familiar with this vehicle, and has observed the vehicle parked in the rear of Trap House #1, Columbus, OH with an Ohio Temporary Tag on the rear of the vehicle. S/A Burns also observed the silver Chevy and black motorcycle parked at the residence that are registered to NOBLE. Your affiant conducted a search on Ohio Tag: HOC-7033, and determined that the black Dodge Charger was registered to NOBLE, with a listed address of 2180 Margaret Ave., Columbus, OH.

17. On or about September 14, 2018, the CI made a call to phone number (614) 619-5136. The CI was instructed to come to an unrelated residence (Trap House #2) to purchase narcotics, and the CI advised that the voice on the phone was NOBLE. Your affiant was present for this phone call. S/A Klontz and your affiant drove the CI to Trap House #2, Columbus, OH, and the CI purchased an amount of Heroin and Crack Cocaine from a Male/White, later identified as FROHNAUER, who was at the residence with NOBLE. The CI paid for the narcotics with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the front door and purchased the narcotics from FROHNAUER and NOBLE. The CI advised that a blue Impala was parked outside Trap House #2, Columbus, OH. Your affiant watched and listened to the narcotics transaction between the CI and FROHNAUER. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected Crack Cocaine, which tested positive for Cocaine.

18. On this same date, ATF TFO Chris Majewski conducted a drive-by of Trap House #2, and confirmed the blue Chevy Impala, bearing Ohio Tag: HDT-6522, registered to NOBLE, 2180 Margaret Ave., Columbus, OH.

19. On or about September 21, 2018, the CI made a call to phone number (614) 619-5136. NOBLE answered the phone and instructed the CI to come to Trap House #2, Columbus, OH. Your affiant was present for this phone call. S/A Klontz and your affiant drove the CI to this location, and the CI purchased an amount of Heroin from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the front door and purchased the narcotics from NOBLE. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI.

20. On this same date, S/A Klontz and your affiant returned to Trap House #2, Columbus, OH. Your affiant observed a black Dodge Charger, Ohio Tag: HOC-7033, parked around the corner from Trap House #2, Columbus, OH. This vehicle is registered to NOBLE with a listed address of 2180 Margaret Ave., Columbus, OH.

21. On or about October 1, 2018, your affiant conducted surveillance at Trap House #2, Columbus, OH. S/A Burns observed the black Dodge Charger, bearing Ohio Tag: HOC-7033 registered to NOBLE, parked around the corner from Trap House #2, Columbus, OH.

22. On or about November 5, 2018, your affiant conducted surveillance at 2180 Margaret Ave., Columbus, Ohio. Your affiant observed the following vehicles parked in front of the residence: a blue Chevy Impala (parked in the yard); a black Dodge Charger (parked on the street); a cream Chrysler (parked on the street); and a silver Chevy Malibu (parked on the street). Your affiant is familiar with these vehicles, which are registered to NOBLE.

23. On or about November 7, 2018, your affiant and S/A Shane Messner met the CI, and the CI had arranged for the purchase of Crack Cocaine and/or Heroin from the DTO. The CI was instructed to go to an unrelated residence (Trap House #3), Columbus, OH. Your affiant and S/A Messner drove the CI to this location, and the CI purchased an amount of Heroin and Crack Cocaine from a Male/White, later identified as Steven NOTT, with pre-recorded Government funds. Your affiant observed a black Chevy Avalanche, bearing Ohio Tag: HGU-7235, parked in the rear of Trap House #3. Your affiant has identified this vehicle being used by NOTT. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from NOTT. The CI advised that the CI exited the residence from the rear door, and returned to your affiant's vehicle. Your affiant watched and listened to the narcotics transaction between the CI and NOTT. The audio and video of the narcotics transaction was consistent with the description of the transaction as described by the CI. Your affiant field-tested the suspected Crack Cocaine, which tested positive for Cocaine.

24. A criminal history check on NOTT (FBI #: 349273JB6) revealed that NOTT has a criminal record which includes narcotic related offenses.

25. On or about November 9, 2018, your affiant conducted surveillance at Trap House #3, Columbus, Ohio. At approx. 4:28 PM, S/A Burns observed an unknown Male/White walk to the rear of Trap House #3, knock on the rear sliding-glass door, and enter the apartment. This manner of entry is consistent with narcotics purchasers seeking to purchase narcotics at locations controlled by the DTO. Your affiant observed NOBLE's black Dodge Charger, Ohio Tag: HOC-7033, parked in the rear of Trap House #3, Columbus, OH.

26. On or about November 26, 2018, your affiant S/A Burns was contacted by the CI and advised that members of the DTO was trafficking narcotics at a new location (Trap House #4). The CI advised S/A Burns where Trap House #4 was located.

27. On or about November 29, 2018, your affiant located Trap House #4, Columbus, OH. S/A Burns observed NOBLE's black Dodge Charger, bearing Ohio Tag: HOC-7033, parked in the rear of Trap House #4.

28. On or about December 7, 2018, your affiant conducted surveillance at 2180 Margaret Ave., Columbus, OH, the home residence of NOBLE. Your affiant observed NOBLE's black Dodge Charger, bearing Ohio Tag: FOC-7033, parked in front of the residence.

29. On or about December 10, 2018, the CI contacted your affiant and advised that a new "Trap House" was being used to distribute narcotics and that it was located in the area of Sycamore St. and Fairwood Ave., Columbus, OH. Your affiant proceeded to this area to conduct surveillance.

30. On or about this same day, your affiant located NOBLE's black Dodge Charger, bearing Ohio Tag: FOC-7033, parked in the rear of a row of townhomes located on the north side of E. Sycamore St. The vehicle was parked behind units 1652/1654 E. Sycamore St., Columbus, OH 43206. Your affiant observed that the units had entry doors in the front and the rear of each townhouse.

31. On or about December 11, 2018, your affiant returned to E. Sycamore St. and observed NOBLE's black Dodge Charger parked in the same location.

32. On or about December 12, 2018, your affiant was contacted by the CI in regards to the "Trap House" located on E. Sycamore St., Columbus, OH. The CI advised that the "Trap House" was the third (3rd) townhome in the row of townhouses located on the north side of E. Sycamore St. Your affiant and S/A Teresa Petit conducted surveillance on this location, and observed NOBLE's black Dodge Charger parked in the rear of the townhomes on E. Sycamore St. Your affiant identified the third (3rd) townhouse as 1656 E. Sycamore St., Columbus, OH 43206.

33. On this same date, your affiant and S/A Petit met with the CI in regards to the purchase of Heroin and/or Crack from NOBLE. The CI arranged for the purchase of an amount of Crack Cocaine and/or Heroin at 1656 E. Sycamore St., Columbus, OH. Your affiant and S/A Petit drove the CI to this location. The CI proceeded to the rear of 1656 E. Sycamore St., walking west in the alley just north of the row of townhouses, toward the rear door of 1656 E. Sycamore St. TFO Jerry Orick observed the CI walking in the alley toward the rear of the townhomes. TFO Orick observed the third (3rd) rear door open and close, which was consistent with the CI entering the residence while monitoring the wire transmitter. The CI purchased an amount Crack Cocaine from NOBLE with pre-recorded Government funds. This transaction was video and audio recorded, and the CI advised the CI entered the residence from the rear door and purchased the narcotics from NOBLE. The CI advised that the CI exited the residence from the rear door, and returned to your affiant's vehicle. Your affiant watched and listened to the narcotics transaction between the CI and NOBLE. The audio and video of the narcotics transaction was consistent with the description

of the transaction as described by the CI. The video shows the CI entering and exiting the third rear door, identified as 1656 E. Sycamore St. Columbus, OH. Your affiant field-tested the suspected Crack Cocaine, which tested positive for Cocaine.

34. On or about December 17, 2018, your affiant had contact with the CI in regards to 1656 E. Sycamore Street, Columbus, OH 43206. The CI advised your affiant that on 12/15/2018, the CI received information that the DTO using 1656 E. Sycamore St. had been resupplied with Crack Cocaine and Heroin. The CI advised that the DTO continues to sell from this location.

35. On or about this same date, your affiant conducted surveillance on 1656 E. Sycamore Street and observed NOBLE's black Dodge Charger parked in the rear of this location.

36. On or about December 19, 2018, your affiant conducted surveillance on 1656 E. Sycamore Street and observed NOBLE's black Dodge Charger parked in the rear of this location.

37. On or about this same date, your affiant conducted surveillance on 2180 Margaret Ave. and observed NOBLE's blue Chevy parked in the yard, next to the residence.

38. On or about December 20, 2018, your affiant conducted surveillance on 1656 E. Sycamore Street and observed NOBLE's black Dodge Charger parked in the rear of this location.

39. On this same date, your affiant met with the CI and the CI made a controlled call to NOBLE. NOBLE stated that they were still on "Sycamore." Your affiant knows this location as 1656 E. Sycamore St., Columbus, OH 43206. Your affiant, and S/A's Petit and Colin Ginley were present for this phone call.

## V.
## CONCLUSION

Through my experience and my discussions with other experienced law enforcement officers, I am familiar with the ways in which individuals involved with illegal activities who are laundering their illicit proceeds in an attempt to appear to have legitimate income conduct their business, and their methods of laundering the proceeds of their illegal activities. I am familiar with the methods, schemes, and operations used by those individuals involved with large-scale criminal activity and know:

a) It is my experience that currency transactions that are conducted enable those individuals involved with large-scale criminal activity and money launderers to invest the cash proceeds of their illicit businesses into an asset, thereby legitimizing the currency;

b) That those individuals involved with large scale criminal activity are known to trade items in their possession for items of monetary value;

c) That those individuals involved with large scale criminal activity conduct various transactions, including the purchase of vehicles and real estate, in order to create an appearance that their income is derived from legitimate sources;

d) That those individuals involved with large scale criminal activity must maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing criminal enterprise;

e) That those individuals involved with large scale criminal activity and money launderers maintain books, records, receipts, notes, ledgers, and other papers relating to the sale of narcotics, and the purchase of assets, including vehicles, real estate and other financial instruments;

f) That the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the individuals have ready access to them, i.e., homes, businesses, and automobiles;

g) That it is common for those individuals involved with large scale criminal activity and money launderers to secrete proceeds of their criminal sales, and records of illicit transactions, sources, and customers, in secure locations within their residences, businesses, garages, storage buildings, and safety deposit boxes for ready access, and also to conceal such items from law enforcement authorities;

h) That persons involved in such criminal activity and laundering conceal caches of currency, financial instruments, precious metals, jewelry, other items of value and/or proceeds of illicit transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in their criminal activities, in their residences, businesses, garages, storage buildings, automobiles, and safety deposit boxes;

i) That those individuals involved with large scale criminal activity and money launderers commonly maintain addresses or telephone numbers in books, papers, pagers, or cellular phones (and often have multiple cellular phones and pagers) which reflect names, addresses, text messages to, and/or telephone numbers for their associates in the criminal organization, even if said items may be in code;

j) That those individuals involved with large scale criminal activity and money launderers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product, and that these individuals usually maintain these photographs in their residences, businesses, and automobiles;

k) That when those individuals involved with large scale criminal activity and money launderers amass large monetary proceeds from the sale of their ill-gotten gains, they attempt to legitimize these profits by utilizing foreign and domestic

banks and their attendant services, including securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate, shell corporations, business fronts, and other methods;

l) That those individuals involved with large scale criminal activity and money launderers sometimes store documents and records relating to their co-conspirators, customers, money, and assets on computer hardware and software, the contents of which frequently yield evidence of their criminal activity and money laundering crimes;

m) That courts have recognized that unexplained wealth is probative evidence of criminal activity in which transactions involving large amounts of cash and high profit margins are common, to include those individuals involved with large scale criminal activity;

n) That it is common for those individuals involved with large scale criminal activity and money launderers to conceal and store items related to their criminal activity and money laundering within safes, footlockers, boxes, containers and other hidden compartments, and within places that they own or over which they exercise control such as residences, businesses, and automobiles;

o) Individuals involved with large scale criminal activity store records of associated criminal acquisition/disposition documents at their residences, businesses, and/or in their vehicles;

In view of the above-mentioned facts and my training and experience in the investigation of financial crimes, I have probable cause to believe that contained within 2180 Margaret Ave., Columbus, Ohio 43219 is evidence of:

- Title 18 USC Sections 1956(a) & 1956(h) - Laundering of Monetary Instruments and Money Laundering Conspiracy; and

- Title 21 USC Sections 841(a) & 846 - Possess with Intent to Distribute a Controlled Substance and Drug Conspiracy.

That Jonathan NOBLE is the current known resident of 2180 Margaret Ave., Columbus, Ohio 43219. Based upon the fact that paper records have been recovered from a previous related search warrant, I believe that contained within the property 2180 Margaret Ave., Columbus, Ohio 43219 is evidence of those crimes.

_____
Jason R. Burns
Special Agent, ATF

Sworn to and subscribed before me this 21 day of December 2018 in Columbus, Ohio.

_____
Chelsey M. Vascura
U.S. MAGISTRATE JUDGE

## ATTACHMENT A

### ITEMS TO BE SEIZED:

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items will be found at 2180 Margaret Ave., Columbus, Ohio 43219:

A. Books, records, notes, ledgers, and other papers relating to the transportation, purchase, distribution, packaging, and sale of controlled substances, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment;

B. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other records related to the receipt, expenditure and concealment or other disposition of income, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment, relating to the distribution of controlled substances;

C. Books, papers, and documents and information contained within cellular phones and electronic organizers reflecting names, addresses, telephone numbers, and other contact or identification information of participants in drug trafficking activities;

D. Cash, currency, currency counters, financial instruments, and records relating to controlled substances income and expenditure of proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

E. Pagers, cellular phones, electronic organizers, caller identification devices, answering machine devices, and other communication devices belonging to Jonathan NOBLE and to search the contents of the listed devices at a later time;

F. Photographs, and videotape of participants in drug trafficking activities, and of property acquired from the sale of controlled substances or money laundering;

G. Bank and other financial institution records consisting of savings, loans, records of deposits, statements, letters of credit, money orders, cashier checks, passbooks, cancelled checks, certificates of deposit, lease agreements, customer account information, income and expense summaries, cash disbursement journals, financial statements, state and federal income tax returns, information related to the receipt and other disposition of income, and related financial information pertaining to the purchase, lease, sale or other disposition of real or personal property, including real estate, automobiles, jewelry, and furniture;

H. United States currency, precious metals, jewelry, and financial instruments, as well as books and records regarding the acquisition, use and disposition of such items of value;

I. Safe deposit box lease agreements and safe deposit keys;

J. Rental/lease agreements for 2180 Margaret Ave. Columbus, Ohio 43219;

K. Proof of residency, including but not limited to cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys; and

L. Any safes, vaults, or secured storage equipment that could secret any of the above listed items, and the contents therein.